Number 25-1911 Oginski v. Vigilant Engine and Hook Company, and we will start with counsel for the appellant. And perhaps, counsel, you can just tell me, I may or may not be pronouncing your client's name correctly. Oginski. Oginski. Okay, very good. Thank you. So, on behalf of Mr. Oginski, you may proceed. Oh, I'm sorry. Thank you. I did neglect to ask, I'm sure that our courtroom deputy told us, would you like to reserve any of your time for rebuttal? Yes, two minutes, please. Very good. Okay, you may proceed. Thank you, Your Honor. This case, in my view, starts and ends with Garcetti. Last night, preparing for today, I looked at the Lane case again, which is front and center here, and I noticed the simplicity of the concurrent opinion. And the concurring opinion basically said all of that writing was unnecessary. The only issue here is whether or not the employee acted pursuant to an official job duty, rolling right back to Garcetti. And then I look at all the precedents that were cited in this case and that are relevant. The Shara case, which the lower court cited, you look at Weintraub, Matthews, they all go back to Garcetti's statement of what was the plaintiff's or the speaker's official job duties. And I would suggest to this court that there is nothing from the pleading from which it could possibly be inferred that the speech that he undertook in this case had anything to do with an official job duty. And before even assessing that, we have to look at what was the speech itself. First of all, he advocated for a policy change. He advocated repeatedly over time. He advocated to... You're talking about BRICS? Yes. Well, yes. When you talk about the policy change, that's the policy change you're talking about, right? Correct. Correct. Yes. Thank you. Sorry. Could you clarify this? He wanted to use it, the BRICS system, as part of his job, right? Well, he wanted the whole department to have access to it. Right. He's part of the department.   So are you saying... I think I take your argument to be that because the job description did not include a specific line saying that his duties included advocating for how he wanted to work or thought he should work, that anything he said about how he wanted to work or he and his colleagues should work is therefore not part of his job. It's not job-related. Does that accurately summarize at least part of your argument? I don't think so because in Shara, for example, the bus driver was advocating how he wanted to do his job, but the bus driver was advocating internally to co-workers and colleagues and fighting about how his actual job should be handled. And here it's much different because the way Oginski advocated was to go to the policy makers themselves and go to them through a method which any citizen could go to them through via in-person conversations, via text message and via the email, which was available and accessible to the public. So I do think that this was, you know, much different than just talking about how to do his job. I think... And in the brief... That's all he was talking about with the trustees is how he wanted to do his job and his fellow firefighters who do their job, right? That was the topic. No, I would not couch it like that. I would say that what he was talking about would have made him more effective at his job and would have affected how his job gets done. But the purpose of his conversation was to make the fire department better as a whole by improving response times for everybody, which would apply even when he wasn't working, even if he wasn't working, even if he quit. The advocacy... Wouldn't that be true of any employee who advocated a better way of doing their job? Presumably, that would apply to their colleagues even when they're on vacation, right? I think it also depends on who they advocate to and how they advocate, because if I go to my boss and I say, hey, you know, we should be assigning work to paralegals differently, that's different than a municipal employee or someone in a paramilitary organization going outside of the chain of command all the way up to a public forum and address specifically in the email the citizens of Great Neck. I mean, it's just... He was... Just because you're talking about something that may or may not make your job better or affect your job doesn't change the fact that it's public speech. And Matthew's First City is a perfect example of that. A police officer was complaining about a policy change to a quota policy, and certainly that would have affected how that police officer would have done his job. But nonetheless, this court found that that was protected speech. The same thing with Montero, which was slightly different because it involved the union, also the Second Circuit case, where a police officer was complaining about manpower cuts on the force. Yes, it would affect how he was doing his job, but he was not speaking pursuant to his official job duties as called for by Garcetti. And then you go to Lane and... It turned out so... One of the things on that point that I wanted to follow up on, because I'm mindful of Matthew's, and in Matthew's, the individual sort of bypassed the chain of command and went straight to the civilian analog, the place where civilians would go to file the same complaint. Here it does seem like he started by complaining to his boss and then moved up the chain before he got to the sort of what I would call the civilian analog reporting places. Am I misunderstanding the record on that? I believe that his first complaint did not go to the boss, but went to trustee one, which is on A11 paragraph 13 of the complaint. According to the complaint, unless I'm missing something, which I don't think I am, the story starts on paragraph 13, which says, shortly after learning about BRICS 911, Oginski contacted a trustee and requested that the trustee discuss it with the chief and requested that it be implemented. And then thereafter, he didn't go back to the chief or his supervisor. He went back to trustee one via text message, and then again, texted trustee one. So it was entirely outside the line of his chain of command. It was entirely via citizen analog, which I understand isn't determinative, but it certainly weighs heavily here. And this wasn't an internal dispute about what type of equipment should be used or how some internal reporting. This was about software that the department could use to implement a policy-wide change that he advocated directly to the policymakers. It wasn't a day-to-day function that he was going to his day-to-day bosses about. It was an overarching policy that was addressed specifically to policymakers. I'm sorry, Judge Robinson. Just one quick follow-up. How do you deal with at least the last few paragraphs of the letter, really digress into personal vendettas, internal personnel issues that really can't plausibly be characterized as a citizen complaint about a matter of public concern? Does that taint the part of the letter you're relying on for purposes of this claim, or we can view the letter as having elements of both? Well, a few things. First of all, yes, of course, the case law is clear that you can have mixed content in public speech. But I also do think it's not entirely private grievances because it is all addressed at the fact that he was saying, I'm being retaliated against for having exercised my First Amendment rights. And, you know, there is case law out there that complaining about retaliation could in fact be protected itself. But I certainly do agree that the second half of the letter does diverge into things that might be personal, but anyone can have a discussion about anything and talk about two different topics within the content of that discussion. The fact that part of the discussion relates to private issues doesn't change the fact that the communication itself was stated by its own terms, that part of the reason for this was, quote, to put things into perspective for members of the Great Neck community. And by the way, the email isn't the only communication. There were other communications also to... We have those a couple minutes for rebuttal. So why don't we hear from counsel for the appellee? Okay, thank you. Thank you. Good morning, and may it please the court. My name is Jacqueline Giordano. I'm from the law firm of Bond, Schenck & King, and I represent the defendants appellees in this matter. Appellee's opposition to Mr. Oginski's appeal is fully set forth in the papers before you. But if you don't have any questions, I'd like to make a few quick points. Overall, appellees assert that the district court properly concluded that plaintiff appellant failed to state a claim of First Amendment retaliation. Here appellant failed to plead any speech he made was as a citizen on a matter of public concern rather than as an employee on matters of personal interest. He alleges three... Can I jump in on that? So we've been focusing on the BRICS issue, but I don't think you would dispute that a complaint with the New York Public Employee Health and Safety Bureau about the N95s is protected speech. Or do you argue that's not protected speech or a report to an agency about safety compliance issues? I believe both reports to agencies, whether it be PESH or the New York State Department of Health, came months and months after the alleged retaliatory actions. Well, no, wait a minute. The report to the PESH was on October 19th, 2022. The hearing on the charges that had been submitted against him, so the charges had been submitted, but there hadn't actually been an adjudication of those, was on November 1. At that hearing, he mentioned that he had filed that complaint with PESH. And then following that hearing, the board suspended him for one year. Isn't that, at the pleading stage, enough to support the inference that he engaged in protected speech and suffered an adverse action in response? I don't believe so, because with regards to that PESH complaint, it was already in motion. The charges would have already had what they were seeking in terms of a penalty. So it was post-discipline speech in terms of him filing the PESH complaint, which related back to... Just to make sure I'm clear on this, I want to make sure there's a... What are the facts and then how are we interpreting them? The charge, the assertion, the request for discipline preceded the PESH complaint. Are you saying that that's the discipline rather than the actual decision-imposing discipline? No, not necessarily. In terms of the causation factor, I don't know how it could be said that someone could file a complaint the day after they receive disciplinary charges to somehow insulate themselves from the discipline proceeding. I feel like that might have a negative impact. Or start to incentivize those kind of filings if they could file a complaint with an outside agency when they know that discipline is before them. So as a matter of law, we should hold that once disciplinary charges are initiated against somebody, any disciplinary decisions that are made after a subsequent protected report can't be... We can't infer that there's a First Amendment violation there because the disciplinary charges had already been filed. I don't know if that has to be a conclusion that's not already been made in terms of the causation factor. Okay. So tell me when you say it's already been made, is there a case that says... I mean, I hear you on causation and I can see why there's a real problem with summary judgment or on the merits here, but you're asserting that this claim fails on the pleadings. And so I just want to understand how we would analyze it on the pleadings. I'm not sure of a case directly on point except again to the causation element of a retaliation claim that it came... My stance would be that it came after the discipline had already started. So he hasn't plausibly alleged that the suspension which followed the protected act... He hasn't plausibly alleged that it was... That the protected act was a contributing factor to the adverse act. There was an initial 10-day suspension that was on September 19th, 2022 as in the complaint. And his HESH complaint came one day after another set of charges were filed against him, which led to a one-year suspension. So the one-year suspension came out of a charges that were filed on October 18th, 2022. And then the HESH complaint was filed on October 19th, 2022. So the timing is crucial. I would agree with that point, but in terms of making a retaliation claim. Okay. So I just wanted to go through a few points absent any other questions at the moment. With the BRICS 911 application, there were repeated references in the email that is included in the complaint that he was coming forward as a member. And I agree with Mr. Ostrove that Garcetti is important here. But the central issue after Garcetti is the perspective of the speaker. Here, I don't know how it could be argued that he was speaking as anything other than a member when him himself kept referring to himself as a member. That was very clear, at least to me. And the district court properly relied on the employee's words in his email, which is in a very descriptive complaint. And to now assert that the district court improperly drew inferences against him, even though he provided those excerpts in his complaint is a little surprising. Can I ask, I'm looking at that we talked a little bit with your counterpart about the Matthews case. And that's a case where an officer made a case to the ultimate authorities about a matter that very much went to the conduct of his day-to-day work. And he very much spoke from his experience as an employee. He wasn't saying, as a citizen of this community, I think this is a bad practice. I mean, he was a citizen of the police department. Why isn't this analogous to that? And why doesn't Matthews control? So, the part of Matthews when they're analyzing this, they talk about in Garcetti the idea about being part and parcel of regular job duties. Here, he's asking essentially for, Mr. Oginski is asking for a different kind of tool to use in doing his job. And he explains the reasons why it would be helpful for him as a member to have this other tool. To me, that's much different than changing policy. What's interesting though, there's really two chapters of the Matthews case. The first chapter was the motion to dismiss. And that came up to us on the district court dismissed on the pleadings. And that came up to us and we said, well, wait a minute. We can't rule on the pleadings until we need evidence to really understand the scope of his job duties and the mechanisms for reporting complaints. And then it came back to us on summary judgment. So, I guess my first question is, gosh, in Matthews, we thought we needed to actually get facts beyond the allegations about how this worked. Why is this different? And then I think part two is, I mean, I guess I understand your argument about this isn't a policy. Although if you look at the letter, he doesn't just tie it to how he performs his job. He ties it to wait times and he ties it to data about efficacy of fire services as a matter of public concern. Is that part of his I wouldn't say that it's not relevant. It provides more of his reasoning behind why he's providing the letter. However, I just think that there's a very big difference between what happened in Matthews and what's happening here. And also I would like to point out that in the complaint itself, he speak, Mr. Oginski speaks about that he conducts training and he has all these other functions and he's held all these different positions within the department, which the district court points out in the report and recommendation. So there are just very descriptive facts in the complaint itself about what his job duties are that tie to me, the BRICS 911 application to being a part of that part and parcel of his job duties. And I think the Weintraub case really supports that as well. I think there was one more point I was going to make, but I might be out of time. But I appreciate you hearing this matter today. Well, thank you very much. We appreciate your argument. Mr. Ostroff, you have reserved two minutes for rebuttal. If there's anything you would like to add. Thank you very much. Yes. So first of all, I do want to address the as a member issue. You know, I was thinking about it in the context of me as a lawyer. If I went to a public meeting or sent an email to a public body, a fire department or a school board, and I said, you know, as a lawyer, I think these actions are unlawful and violate this law or problem for this reason. I'm saying that as a lawyer, or at least as it can be inferred on this pleading, you know, was saying as a member, just to give credibility to he's somebody who knows something. He wasn't saying I am making these statements pursuant to my official job duty, just because he was trying to bolster his credibility and saying, hey, as a member, I know what I'm talking about here. So I liken that to me as a lawyer. And quite frankly, again, highlighting where we are, this is the pleading stage. So if two inferences are available from the as a member comment, well, then the inference cannot be drawn against my client. And then separately, in paragraph 29 on a 18 of the record, during one of the conversations that Oginski had with Weiss, who he was absolutely not supposed to speak to in the context of his job, he's not in the chain of Where's that in the record that he's not supposed to? Well, he's the president. There's no Hang on. Is there something in the record that says he's not supposed to? It doesn't. There is not in the current pleading. I did not draft the pleading by saying he's not supposed to speak to the president. I'm wondering where that comes from. Hang on, I'm talking. Why should we be making an inference one way or the other about that? I understand to draw any inferences that are favorable to the non-moving party from this. But where would that inference even come from, as opposed to just randomly making something up? Okay. Well, first of all, we know it's a paramilitary organization. We know that every firefighting, you're just characterizing a firefighting company as a paramilitary operation. I believe that is true of every firefighting. And I think that could be recognized as a matter of law. But I also cited the website. And also, even just from the complaint, you can infer it because they're using military titles for everybody. And the bottom line is that you would violate the rules of the paramilitary organization by reporting to someone who is not your direct supervisor. Is that the inference you're suggesting? I believe that inference is fair and reasonable. And I assume this court, as myself, have litigated dozens of police and fire and other correction officer cases. And that's how all those organizations that I've ever interacted with operate. But I think at least where we are right now, it's a fair inference from what we see here in the complaint. And not only that, more importantly, when he went and spoke to Weiss, he specifically said it's a specific allegation in the complaint on paragraph 29A18. Oginski noted he was making these complaints as a citizen of the local community as response time specifically affected him like other members of the community. Let me just pause here. Let me see if, because you've gone over your time. Do the other members of the panel have other questions? No. All right. No, we appreciate all these additional points, Minister Ostroff. But we will take the case under advisement. We thank you both for appearing by Zoom.